UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

AKEEM EDWARD CORTEZ HORNER                                           PLAINTIFF
ADC #153909

V.                            No. 4:19CV00690-LPR-JTR

KEITH BOWERS, Administrator,
Craighead County Sheriff's Department;
and MARTY BOYDE, Sheriff,
Craighead County                                                     DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

On October 1, 2019, Plaintiff Akeem Edward Cortez Horner ("Horner") initiated this action by filing a *pro se* § 1983 Complaint alleging that, while he was

a pretrial detainee in the Craighead County Detention Center ("CCDC"), he was subjected to inhumane conditions of confinement in violation of his rights under the Fourteenth Amendment.[1] *Doc. 2.* At the direction of the Court, he later filed an Amended Complaint clarifying his constitutional claims. *Doc. 6.*[2]

Before Horner can proceed with this action, the Prison Litigation Reform Act ("PLRA") requires the Court to screen his pleadings, and dismiss any claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a) & (b). To survive the screening process, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When making

---

[1] In his Complaint, Horner identified himself as a pretrial detainee. *Doc. 2 at 3.* In his Amended Complaint, he marked the box on the § 1983 form as "serving a sentence as a result of a judgment of conviction." *Doc. 6 at 3.* Because a pretrial detainee's burden of demonstrating a Fourteenth Amendment violation is "lighter" than what a convicted prisoner must prove to establish an Eighth Amendment violation, the Court has given Horner the benefit of the doubt by evaluating his claims under the more favorable Fourteenth Amendment due process standard. *Morris v. Zefferi,* 601 F.3d 805, 809 (8th Cir. 2010); *see also Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979) (explaining that "[d]ue process requires that a pretrial detainee not be punished," while an inmate who has been convicted and sentenced "may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment").

[2] The Court ordered Horner to file an Amended Complaint to cure pleading deficiencies in his Complaint. *Doc. 4.* The Court has read his *pro se* Complaint and Amended Complaint, together, as constituting his claims. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (pro se complaint must be "liberally construed" and "pro se litigants are held to a lesser pleading standard than other parties"); *Kiir v. N.D. Pub. Health,* 651 F. App'x 567, 568 (8th Cir. 2016) (amendment "intended to supplement, rather than to supplant, the original complaint," should be read together with original complaint).

this determination, the Court must accept as true the allegations contained in the pleadings. *Id.*

## II. Discussion

Horner's inhumane conditions of confinement claims are based on the following allegations: (1) his food was prepared and served by inmates and guards who did not wear proper gloves, did not wear hairnets, did not wear clean clothing, had not been tested for diseases, did not cover the food trays, and served food that did not meet state requirements for "nutrition amounts" and contained foreign "articles"; (2) he was denied all outside exercise; (3) the CCDC was in a "constant state of disrepair," with leaky plumbing, unsanitary water faucets that had to be used for drinking by some detainees, black fungus and mold in the showers, and "deteriorating commodes"; (4) mattresses were not cleaned between uses by detainees, no "lice prevention spray" was used on detainees at intake, and detainees shared nail clippers and razors; (5) detainees were charged $2.50 to $3.00 for "indigent packs" and nail clippers; and (6) the air conditioning was broken. *Doc. 2 at 4-8; Doc. 6 at 4.*

Horner alleges that Defendants Jail Administrator Keith Bowers ("Bowers") and Sheriff Marty Boyde ("Boyde") knew about the CCDC conditions and were responsible for providing a clean, safe environment for him and other detainees. *Doc. 2 at 5-6.*

Horton contends that the conditions of confinement in the CCDC caused him to "fear for [his] safety every day." *Id. at 5.* In his prayer for relief, he seeks $250,000 in compensatory damages, along with an injunction to prevent Defendants from retaliating against him. *Id. at 8; Doc. 6 at 5.*

Finally, in his Amended Complaint, filed on November 19, 2019, Horner states that he had been in the CCDC for "three months."[3] *Doc. 6 at 4.* Accepting this statement as true, this means that: (1) Horner was booked into the CCDC in mid-August 2019; and (2) the conditions of confinement described in his pleadings lasted for three months or less. On January 21, 2020, Horner advised the Court that, on an unspecified date, he was transferred from the CCDC to the Northeast Arkansas Community Correction Center. *Doc. 7.*

### A. Horner's Request for Injunctive Relief

Because Horner is no longer incarcerated in the CCDC, he lacks standing to seek injunctive relief and this claim, as a matter of law, is now moot. *Zajrael v. Harmon,* 677 F.3d 353, 355 (8th Cir. 2012) (holding that a prisoner's request for injunctive relief is rendered moot when he is transferred to another facility and is no longer subject to the allegedly unconstitutional conditions).

---

[3] In the Order directing Horner to file an Amended Complaint, the Court explicitly instructed him to state "the specific dates that he was subjected to the allegedly unconstitutional conditions of confinement" in the CCDC. *Doc. 4 at 2.*

### B. Horner's Request for Compensatory Damages Based On the Alleged Inhumane Conditions of Confinement

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from any conditions of confinement amounting to "punishment." *Bell v Wolfish,* 441 U.S. 520, 535 (1979). Whether conditions of confinement constitute punishment must be determined based on the totality of the circumstances created by the conditions and the duration of exposure to those conditions. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 909 (8th Cir. 2020); *Owens v. Scott County Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003); *Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996); *Green v. Baron,* 879 F.2d 305, 309 (8th Cir. 1989).

Under the Fourteenth Amendment, punishment that "deprive[s] inmates of the minimal civilized measures of life's necessities" is unconstitutional. *Owens,* 328 F.3d at 1027; *see also Green,* 879 F.2d at 309-10 (pretrial detainees have a "right to a safe and healthy environment," and must be provided "basic human necessities," including adequate food, clothing, shelter, personal hygiene, and sanitation). The length of time that a detainee is subjected to the allegedly unconstitutional conditions is a "critical factor" in the analysis, and "[c]onditions such as a filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months." *Smith,* 87 F.3d at 269.

Additionally, "[b]ecause a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some *actual injury* before he can receive compensation." *Irving v. Dormire,* 519 F.3d 441, 448 (8th Cir. 2008) (emphasis added). The PLRA has engrafted this principle into its "physical injury rule," which specifies that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e) & e(h) (including pretrial detainees in definition of "prisoner"). Thus, to recover compensatory damages, a prisoner must allege a *physical injury* that is "more than … *de minimis*." *McAdoo v. Martin,* 899 F.3d 521, 525 (8th Cir. 2018); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004); *see also Bell*, 441 U.S. at 539 n.21 (explaining that "[t]here is … a *de minimis* level of imposition with which the Constitution is not concerned").

In his Complaint, Horner alleged only that being exposed to the unconstitutional conditions in the CCDC made him "fear for [his] safety every day." *Doc. 2 at 5.* In the Order directing Horner to file an Amended Complaint, the Court *explicitly instructed him to explain "how he was <u>personally</u> harmed by <u>each</u> of the conditions described" in his Complaint*. *Doc. 4 at 2* (underlined emphasis in original). Horner did not follow that instruction and filed an Amended Complaint which states only that, being exposed to those conditions of confinement violated

6

his "due process rights." *Doc. 6 at 5.* His Amended Complaint is silent on how those violations caused him *any physical injury. Id. at 4-5.* Thus, as Horner's pleadings now stand, the only harm he suffered from being exposed to all of the allegedly inhumane conditions of confinement described in his Complaint and Amended Complaint, was *"fear for [his] safety every day." Doc. 2 at 5.*

1. Horner's Claims Regarding Food Preparation and Serving

A prisoner's constitutional rights may be violated if he is served food that is "nutritionally inadequate or prepared in a manner presenting an immediate danger to his health." *Ingrassia v. Schafer,* 825 891, 897 (8th Cir. 2016) (quoting *Wishon v. Gammon,* 978 F.2d 446, 449 (8th Cir. 1992)). Here, Horner makes no allegation that he suffered *any* adverse physical effects from the unsanitary food preparation and serving practices. In addition, he provides *no facts* to support his vague allegation that the food was not served in portions large enough to constitute a "nutritional amount." Finally, he makes no allegation that consuming this food caused him any physical injury. *See Wishon,* 978 F.2d at 448-49 (finding that a prisoner, who was served food that "often" contained foreign objects, had not stated a constitutional violation because he suffered no harm); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that serving a pretrial detainee food that "occasionally contains foreign objects, or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation").

7

As a pretrial detainee in the CCDC for three months, Horner's subjective "fears" about how the food was prepared and whether the serving sizes he received were large enough to be "nutritional," with no hint that *any physical injury* accompanied his "fears," is not sufficient to state a viable inhumane conditions of confinement claim.

2.   Horner's Claim That He Was Denied Outside Exercise

Horner alleges that, during the three months he was in the CCDC, he was denied outside exercise, and claims that being allowed to exercise in the day room "does not qualify." *Doc. 2 at 4; Doc. 6 at 4.*

The Eighth Circuit has expressly held that the denial of outside recreation for three months is insufficient to establish a constitutional violation. *Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002); *but see Wishon,* 978 F.2d at 449 ("Lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened."). Horner does not allege *any physical injury* from not being allowed outdoor exercise, and fails to explain how his ability to exercise in the day room and his cell was not sufficient.

Under controlling Eighth Circuit case law, Horner's allegation, that he was denied outdoor exercise for three months, does not rise to the level of a constitutional violation, and fails to state a viable inhumane conditions of confinement claim.

### 3. Horner's Claim That He Was Subjected to Unsanitary Living Conditions

Horner alleges that the CCDC was in a "constant state of disrepair," with leaky plumbing, unsanitary water faucets, "black fungus" and mold in the showers, and "deteriorating commodes." He also alleges that the mattresses were not cleaned between uses by detainees, no "lice prevention spray" was used on detainees at intake, and detainees shared nail clippers and razors. *Doc. 2 at 7; Doc. 6 at 4.*

Pretrial detainees "are entitled to reasonably adequate sanitation [and] personal hygiene, … particularly over a lengthy course of time." *Stickley v. Byrd,* 703 F.3d 421, 423 (8th Cir. 2013). Horner's allegations, which at best establish that he was exposed to generally unsanitary conditions in the CCDC for three months, fall far short of demonstrating that those conditions deprived him of "the minimal civilized measure of life's necessities." Finally, he makes no allegation that being exposed to these conditions caused him *any physical injury*. *See Smith*, 87 F.3d at 268 (finding no constitutional violation where a prisoner failed to allege "that he was exposed to disease or suffered any other consequences" as a result of being exposed to raw sewage).

Accordingly, Horner's three-month exposure to leaky plumbing, unsanitary water faucets, black fungus and mold, inadequate cleaning of mattresses, and sharing

9

of nail clippers and razors, with no accompanying physical injury, fails to state a viable inhumane conditions of confinement claim.

    4.    Horner's Claim Related to "Indigent Packs"

Horner makes the vague allegation that detainees were required to pay "$2.50 to $3.00" to receive "indigent packs." *Doc. 2 at 6; Doc. 6 at 4.* Although Horner does not describe the items in the "indigent pack," they normally contain various personal hygiene items to augment the soap and hot water available to all prisoners. "The Constitution does not prohibit charging prisoners for essential prison services, at least in the absence of a showing that the result is a severe deprivation of a fundamental right." *Holloway v. Magness,* 666 F.3d 1076, 1080 (8th Cir. 2012) (no constitutional violation from "elevated phone charges" for inmate calls to family members); *Lewis v. Holloway,* No. 5:17cv5099, 2017 WL 3461303, at *4 (W.D. Ark. Aug. 11, 2017) (finding "no objectively serious deprivation" due to charging $1.50 per week for "indigent pack" supplies).

Horner makes *no allegations* that, during the three months he was detained in the CCDC: (a) he was actually deprived of any essential items necessary to maintain his personal hygiene; or (b) he suffered *any physical injury* related to not receiving an "indigent pack." Thus, Horner has failed to state a viable inhumane conditions of confinement claim related to his lack of access to an "indigent pack."

### 5. Horner's Claim That the Air Conditioner Was Broken

Horner admits that he was detained in the CCDC for about two weeks in August, all of September and October, and about two weeks in November. During that time, Horner alleges the air conditioner was "broken," and there was only one fan. *Doc. 2 at 6; Doc. 6 at 4.* According to Horner, this constituted an inhumane condition of confinement in violation of his Fourteenth Amendment rights.

There is no constitutional right to air conditioning. *Cotton v. Hutto*, 540 F.2d 412, 414 (8th Cir. 1976) (holding that Arkansas prisons were not constitutionally required to air condition the prisons); *see also Chandler v. Crosby,* 379 F.3d 1278, 1297-98 (11th Cir. 2004) (no constitutional violation when Florida prison provided no air conditioning during summer months); *Lane v. Hutcheson,* 794 F. Supp. 877, 884 (E.D. Mo. 1992) (rejecting pretrial detainee's Fourteenth Amendment claim based on lack of air conditioning at jail, where the ventilation system was "adequate" and detainee complained only that the heat was "irritating … in reference to emotional disposition"). As with his other claims, Horner does not allege that the lack of air conditioning caused him to suffer *any physical injury*. Thus, under controlling Eighth Circuit case law, Horner's allegations, related to the broken air conditioner, fail to state an inhumane conditions of confinement claim.

### III. Conclusion

Accepting all of Horner's allegations as true, and considering his claims together, in their totality, the Court concludes that his Complaint and Amended Complaint fail to state any viable constitutional claims. Accordingly, this action should be dismissed, without prejudice.

IT IS THEREFORE RECOMMENDED THAT:

1. Horner's Complaint and Amended Complaint (*Docs. 2 & 6*) be DISMISSED, WITHOUT PREJUDICE, for failing to state a claim upon which relief may be granted.

2. The dismissal of this case be counted as a "STRIKE," pursuant to 28 U.S.C. § 1915(g).

3. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 12th day of June, 2020.

_____
UNITED STATES MAGISTRATE JUDGE